**DRAKE MOTOR LINES, INC. and Motor Transport Labor Relations, Inc.**

v.

**HIGHWAY TRUCK DRIVERS AND HELPERS LOCAL NO. 107, et al.**

**Civ. A. No. 70-1303.**

United States District Court,
E. D. Pennsylvania,
Civil Division.

June 29, 1972.

James J. Leyden, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiffs.

Kenneth S. Hall, Davis, Casper & Muller, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

This is a suit to enjoin arbitration of a grievance brought by a labor union. Since no issue of fact has been raised and the grievance is identical to one previously arbitrated, summary judgment will be rendered in favor of the plaintiff.

At one time Lit Brothers Department Store, Philadelphia, had its own employees and trucks for the delivery of its merchandise. Thereafter, it entered into an agreement with United Parcel Service of Pennsylvania for the performance of this work. United Parcel was a *contract* carrier, that is, one that was authorized by the appropriate regulatory commissions to make such arrangements as it wished with its customers for the delivery of their products. United Parcel not only made deliveries for Lit Brothers but also for other Philadelphia stores. Certain labor agreements then in existence contained a "house concern clause." A "house concern" is a private carrier, which has used its own trucks and drivers to deliver its freight, but discontinue these operations and leases equipment and the services of drivers and helpers from a contract carrier. Under the "house concern clause," the employees of the private carrier follow the work and become employees of whichever contract carrier assumes it.

It 1967, United Parcel, which as noted was a contract carrier and which had employed former drivers and helpers from Lit Brothers, ceased operations in Philadelphia. Thereafter, Drake Motor Lines, Inc., a *common* carrier, began to provide delivery service for Lits. A common carrier is required to accept freight from any member of the public. Its rates for rendition of the same services are uniform for all shippers. Drake has no contract with Lit Brothers but works on a day to day basis which Lits can terminate by simply calling another carrier.

In 1967, Highway Truck Drivers and Helpers Local No. 107 filed a grievance under its contract with Drake and Motor Transport Labor Relations, Inc., (MTLR), the employer representative at contract negotiations. The grievance alleged that Drake had refused to employ 42 former employees of Lit Brothers in-

cluding William Clark, William Murray, Joseph Powell and John Liebert. The union's theory was that Drake was required to employ and give seniority to the former Lit Brothers employees by reason of the "house concern clause." On the basis that it was a common carrier, not a contract carrier, the grievance was resolved in Drake's favor by the Eastern Conference Joint Area Committee, a group of union and management representatives who arbitrate disputes for the trucking industry. Under the appropriate collective bargaining agreement a decision of the Area Committee is to be final and binding: General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss and Company, Inc., 372 U.S. 517, 519, 83 S. Ct. 789, 791, 9 L.Ed.2d 918 (1963); Bieski v. Eastern Automobile Forwarding Company, Inc., 396 F.2d 32, 37 (3rd Cir. 1968).

In 1970, Local 107 again started grievance machinery against Drake on behalf of Clark, Murray, Powell and Liebert, as well as the entire list of former United Parcel employees who had been engaged in delivering Lit Brothers merchandise. Once again the claim was for employment and seniority rights provided by the "house concern clause" of the appropriate collective bargaining agreement. When the grievance was docketed, Drake and MTLR brought the present action under Section 301 of the Labor Management Relations Act, 29 U.S.C. 185, alleging that the two grievances were the same and that the union was attempting to overturn a final and conclusive decision of the Eastern Conference Joint Area Committee. After hearing and a prima facie showing of the identity of the matters, the 1970 grievance proceeding was stayed by this Court pending further order. The matter now comes before me for final disposition on the pleadings, exhibits, and grievance records.

■ Although a court must view the facts from the position most favorable to the party who opposes a motion for summary judgment, United States v.

Diebold, 369 U.S. 654, 82 S.Ct. 993, 8 L. Ed.2d 176 (1962), all the evidence here supports the plaintiffs' contention. Defendants have not produced additional facts although given the opportunity to do so. They may not reserve evidence for trial and, at the same time, resist summary judgment: Proctor v. Sagamore Big Game Club, 265 F.2d 196, 201 (3rd Cir. 1959). Here there is an identity of the parties, the factual background, and the legal issues. Thus the grievances are the same, the decision of the Area Committee rendered on the earlier one is final, and plaintiffs are entitled to summary judgment.