Alfred **FERDNANCE**, David J. Siboloski, Allen A. Kemppainen, and Ivory Jones, Plaintiffs,

v.

**AUTOMOBILE TRANSPORT, INC.**, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 299 of International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Defendants.

Civ. No. 77–71288.

United States District Court, E. D. Michigan, S. D.

Nov. 29, 1978.

---

**3.** Chief Judge Joseph S. Lord, III reached the same conclusion in *Blackburn v. Prudential Lines, Inc.*, 454 F.Supp. 1302 (E.D.Pa.1978).

Ellis Boal, Detroit, Mich., for plaintiffs.

C. John Holmquist, Bloomfield Hills, Mich., for defendant Auto. Transport.

James P. Hoffa, Detroit, Mich., for defendants Intern. Union and Local 299.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This matter is before the Court on motions for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendants Automobile Transport, Inc., (ATI), International Brotherhood of Teamsters and Teamsters Local 299 (the Union). In their answer to defendants' motions, plaintiffs have consented to the motion of defendant International Brotherhood of Teamsters, thus leaving only the motions of the other two defendants for decision by this Court. Since both motions involve substantially similar legal issues and virtually identical facts, the Court has consolidated them for hearing and will dispose of them together in this memorandum opinion.

Plaintiffs filed their complaint against defendants in May 1977, alleging a breach of the duty of fair representation by the union, and breaches of the collective bargaining agreement and unfair labor practices by ATI. In its memorandum opinion of January 9, 1978, this Court limited the issues in the case to whether plaintiffs were discharged from their employment with ATI in violation of the collective bargaining agreement and whether the Union breached

its duty of fair representation. Defendants now contend that after extensive discovery in this case there appears no genuine issue of material fact, and on the facts presented they are entitled to judgment as a matter of law. After considering the pleadings, briefs and extensive discovery materials in this case, the Court is of the opinion that it must agree with defendants.

Plaintiffs were truck drivers employed as "carhaulers" by defendant ATI during the time period at issue in this case. At that time both ATI and Local 299 were signatory to a collective bargaining agreement entitled "National Master Automobile Transporters Agreement and the Central and Southern Conference Areas Supplemental Agreements covering Truckaway, Driveaway Local and Garage Operations." That agreement had been the subject of renegotiation discussions between representatives of the signatory companies and the Teamsters. It was to have expired on May 31, 1976, but was extended provisionally past that date by the negotiators of the new contract. The agreement contained a no-strike clause, which all parties admit was in full force during the time at issue in this case.

On May 21, 1976, ten days before the expiration date of the original contract, the negotiating committee reached a tentative agreement on the terms and conditions of the new contract. This agreement was signed by the negotiating committees and was subject to ratification by the membership under the provisions of the Constitution of the International Brotherhood of Teamsters. In accord with those provisions, ballots were mailed to the employees covered by the contract. The results of that balloting revealed that the union membership disapproved the contract by a margin of 5,334 to 4,043. The terms of the tentative agreement accordingly were rejected, and the negotiating committees made arrangements to meet to further revise the tentative agreement.

On July 1, 1976, the national negotiating committees signed a second stipulation of agreement, which also was subject to ratification by members of the local union. The same procedures were followed as in the first balloting, except that the General Executive Board of the International Union determined that the second agreement was a "final agreement" within the International Union's constitution and under the constitution's provisions could be rejected only by a two-thirds vote of the affected membership. In the second balloting, 3,718 votes were in favor of ratification and 6,400 votes were opposed. Since the contract was not rejected by two-thirds of the membership, it was declared ratified.

On June 21, 1976, several days after disapproval of the first tentative agreement was announced, and during the extension of the original contract, plaintiff Ferdnance called for a wildcat strike at a meeting of the carhaul members of Local 299. All plaintiffs participated in the strike; picketing, which began at the local Union hall, was moved to ATI's terminal in Detroit.

The parties agree that the strike occurred without Union authorization. In fact, Dave Johnson, president of Local 299, tried to prevent the strike, and other Union officers urged the striking employees to return to work. Pursuant to the National Agreement, ATI sent telegrams to the International Union, the Central Conference and Local 299 to ascertain whether the work stoppage was authorized. ATI received no response from the International Union or the Central Conference, which under the terms of the agreement meant that the work stoppage was not authorized. The strike and the picketing continued, however, even after both ATI and Union personnel ordered the strikers back to work.

In response, ATI brought an action in Federal District Court, seeking damages and an injunction against the strike and continuation of picketing. A temporary restraining order was issued, but the court later declined to issue a preliminary injunction, holding that it lacked authority to do so under *Boys Markets, Inc. v. Retail Clerk's Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), because the dispute did not involve a matter arbitrable under

the collective bargaining agreement. *Automobile Transport, Inc. v. Ferdnance*, 420 F.Supp. 75 (D.C.1976).

The temporary restraining order was served on the strikers in the evening of June 22, 1976. The last strikers dispersed at approximately 6:30 a. m. the following day.

When all the drivers returned to work, ATI informed them that their actions were under investigation and disciplinary action might be taken. No disciplinary action was taken, however, until July 29, 1976, when the Federal District Court denied ATI's request for a preliminary injunction. At that time ATI discharged the four plaintiffs in this action and Gerald Belisle, a former plaintiff in this action. ATI also suspended eight drivers and two garagemen for one week and issued warning notices to twenty-six other employees for their conduct during the strike.

After their discharges, the five employees filed grievances with Local 299, asserting that the discharges violated the collective bargaining agreement. These grievances were then processed by representatives of Local 299 in accordance with the grievance procedure specified in the collective bargaining agreement. That procedure utilizes a joint committee as the arbitration tribunal; the panel is composed of an equal number of representatives from the employers and unions which are parties to the agreement in the appropriate geographic area. Under the collective bargaining agreement, the decisions of joint committees are final and binding upon all parties, including the employees affected.

Plaintiffs attended the first local level hearing with their personal attorney. Representatives of Local 299 also were present. Plaintiffs told the Business Agents of Local 299 that they did not want to be represented by the Union; the agents present, however, argued before the committee on plaintiffs' behalf.

Since no resolution of the grievances occurred at the first hearing, a second local level meeting took place several days later. All plaintiffs were present and were represented by an attorney. ATI representatives also attended with their attorney, as did representatives of Local 299. Plaintiff Ferdnance was excused from the meeting since he already had had his local level meeting. After presentation of ATI's case against each plaintiff present, plaintiffs and their attorney consulted with the union representatives and their attorney. Wilson Holsinger, business agent for Local 299, stated that it was the Union's position that ATI had failed to provide sufficient evidence to justify the discharges and requested that plaintiffs be reinstated with full back pay. Plaintiffs' attorney, however, indicated that Holsinger did not represent plaintiffs, and that Gerald Belisle would speak on their behalf. Belisle presented several arguments on plaintiff's behalf, and plaintiffs also indicated that they incorporated Local 299's arguments into their own.

When ATI refused to reinstate plaintiffs, the grievances were docketed with the Tri-City Joint Arbitration Panel in accordance with the provisions of the collective bargaining agreement. Plaintiffs attended the hearing with their attorney, and Local 299 representatives also spoke on plaintiffs' behalf, although plaintiffs continued to refuse representation by Local 299. Holsinger again stated the Local's position that ATI had discriminated against plaintiffs by firing them, since all employees had participated in the work stoppage to varying degrees. He stated that ATI's evidence did not support the penalty of discharge, and urged that plaintiffs be given leniency. All the plaintiffs also spoke on their own behalf.

Plaintiffs' grievances were deadlocked by the Tri-City Panel. In accordance with the National Agreement, the grievances were then referred to the Central-Southern Conference Automobile Transporters Joint Committee, and were docketed to be heard at the meeting in Colorado.

Plaintiffs Siboloski and Jones attended the Colorado hearing. Local 299 representatives attended and presented cases on plaintiffs' behalf. Plaintiffs also made statements and arguments to the Panel.

The hearing on the grievances of plaintiffs Ferdnance and Kemppainen were postponed until the next Joint Committee meeting, since neither of these plaintiffs attended the Colorado hearing. At the conclusion of the hearing in Colorado, the Joint Committee sustained the discharge of plaintiffs Siboloski and Jones, finding their conduct to be in violation of the no-strike clause of the collective bargaining agreement.

The Ferdnance and Kemppainen grievances were heard at the next Joint Committee meeting in Atlanta, Georgia. Plaintiff Kemppainen was present and spoke on his behalf. Although plaintiff Ferdnance was notified of the Atlanta hearing, he failed to appear and did not notify Local 299 that he would not attend. Holsinger again spoke on behalf of both plaintiffs, raising arguments similar to those he had presented before the Tri-City Panel. The Joint Committee found the conduct of Ferdnance and Kemppainen to be in violation of the no-strike clause of the collective bargaining agreement, and sustained both discharges. All plaintiffs then filed the complaint in the case presently before the Court.

Plaintiffs concede that the basic facts are not disputed. They contend, however, that there is a genuine factual issue as to the purpose of the strike, and that that issue precludes a grant of summary judgment in this case. Plaintiffs argue that if the strike were directed at the Union rather than ATI, as plaintiffs contend, it did not concern an arbitrable grievance and therefore was not in violation of the collective bargaining agreement. Under this theory, therefore, plaintiffs' discharges were not "for just cause" as required by the agreement.

Clearly, the Court cannot grant a motion for summary judgment if there exists a genuine issue of material fact. See Rule 56, Fed.Rules Civ.Pro.; Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). This principle applies, however, only when the factual issue is material; if the only factual disputes concern issues which are unnecessary to disposition of the case, summary judgment may be appropriate. 6 Moore's Federal Practice ¶ 56.15[1.–0] (2d ed. 1976 & Supp. 1977–78).

■ Even assuming that there is a genuine dispute as to the purpose of the strike,[1] the Court is of the opinion that such a factual dispute is immaterial to disposition of the instant case. The Joint Committee has determined that plaintiffs' conduct violated the collective bargaining agreement, and constituted just cause for the dismissals; whether or not this Court agrees with that determination, it is bound to accept it under a long line of court precedent. See, e. g., General Drivers v. Riss, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); Morris v. Werner-Continental, Inc., 466 F.2d 1185 (6th Cir., 1972), cert. denied, 411 U.S. 965, 93 S.Ct. 2144, 36 L.Ed.2d 685 (1973).

■ Despite some opinion to the contrary, see, e. g., General Drivers, Local 554 v. Young & Hay Transportation Co., 552 F.2d 562 n.5 (8th Cir., 1975), it is well settled in this Circuit that decisions of joint arbitration committees are to be accorded the same weight and given the same finality as decisions of any other arbitrator. Morris v. Werner-Continental, Inc., supra; see also General Drivers v. Riss, supra, 372 U.S. at 519, 83 S.Ct. 789. Because a fundamental goal of federal labor policy is the rapid and peaceful disposition of labor disputes through the means agreed upon by parties to a collective bargaining agreement, see United Steelworkers v. Enterprise Wheel & Car Corp., supra; United Steelworkers v. American Manufacturing Co., supra; United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ("The Steelworkers Trilogy"), as a general rule

1. The Court notes that if the strike were directed against the Union rather than ATI, it is odd that the picketing continued at the ATI terminal rather than at the Union Hall.

the courts may not reconsider the merits of arbitration decisions. *E. g., General Drivers v. Riss, supra,* 372 U.S. at 567–68, 83 S.Ct. 789. As the Sixth Circuit stated in *Chambers v. Beaunit Corp.,* 404 F.2d 128 (6th Cir. 1968), "The fostering of good industrial relations makes it imperative that courts give effect to the bargained for and agreed upon method of settling grievances." 404 F.2d at 131.

The limited circumstances in which a court may review the merits of an arbitration decision have been well defined. If the grievance procedure was a sham, substantially unavailable or arbitrary, or if there has been fraud, deceit or a breach of the union's duty of fair representation, the court may then consider the merits of the arbitrator's decision. *See, e. g., Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Morris v. Werner-Continental, Inc., supra.* In the present case, the briefs, pleadings and extensive discovery material indicate only one possible ground for invoking the exception to the general prohibition on court review of arbitration decisions; that ground is a breach of the Union's duty of fair representation, which also constitutes the basis for plaintiffs' claim against the defendant Union.

It is clear that the Court may find a union has breached its duty of fair representation only in narrowly defined circumstances; a member of the collective bargaining unit must show that the union's conduct toward him was arbitrary, discriminatory, or in bad faith before he can succeed in an action for breach of the fair representation duty. *Vaca v. Sipes, supra.* As the Sixth Circuit has stated:

A union must conform its behavior to each of these three separate standards. First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct.

*Ruzicka v. General Motors Corp.,* 523 F.2d 306, 309–310 (6th Cir. 1975). Mere displeasure with the arbitrator's decision or disagreement with the strategy employed by union representatives is not sufficient, however. *Fleming v. Chrysler Corp.,* 416 F.Supp. 1258 (E.D.Mich.1975); *Provenzino v. Merchants Forwarding,* 363 F.Supp. 168 (E.D.Mich.1973). Nor is there a breach of the duty merely because there were errors in the arbitration process, *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), or because the parties incorrectly interpreted the collective bargaining agreement. *Dill v. Greyhound Corp.,* 435 F.2d 231 (6th Cir. 1970); *Bazarte v. United Transportation Union,* 429 F.2d 868 (3d Cir. 1970). Moreover, proof that the union may have acted negligently or exercised poor judgment is insufficient to establish a claim of unfair representation. *Cannon v. Consolidated Freightways Corp.,* 524 F.2d 290 (7th Cir. 1975); *Bazarte v. United Transportation Union, supra.*

Upon a close review of the facts in this case, the Court is convinced that plaintiffs have not shown any evidence of unfair representation under the standards cited above. Union representatives were present for plaintiffs at each stage of the grievance proceedings. Despite plaintiffs' refusal to be represented by the Union, Union representatives raised several colorable arguments on plaintiffs' behalf at the arbitration hearings. While the Court might agree that the Union could have used a more effective strategy or more persuasive arguments before the Joint Committee, that clearly is an improper basis upon which to rest a breach of the fair representation duty. *See Cannon v. Consolidated Freightways Corp., supra; Bazarte v. United Transportation Union, supra; Dill v. Greyhound Corp., supra.* The facts simply fail to reveal that the Union acted in an arbitrary or discriminatory manner, or conducted itself in bad faith. Furthermore, the extent of Union participation in the grievance proceedings persuades this Court that the Union hardly can be said to have handled plaintiffs' claims in a perfunctory manner. *See Dill v. Greyhound Corp., supra.*

*Compare Ruzicka v. General Motors Corp., supra.* For these reasons, the Court finds there to be no breach of the Union's duty of fair representation.

Since there are no genuine issues of material fact, and since the Court has determined that as a matter of law the Union has not breached its fair representation duty, Local 299's motion for summary judgment will be granted.

As earlier stated, absent the alleged breach of the Union's duty of fair representation, this Court has no basis upon which to review the decision of the Joint Committee; that decision therefore must stand. Accordingly, and for the same reasons stated with respect to the defendant Union, defendant ATI's motion for summary judgment shall be granted.

Appropriate orders shall be submitted.